Good morning, Your Honor. My name is Jonathan Kaufman. I represent the petitioners Jaswinder Singh and Baljeet Kaur. Mr. Singh and Mrs. Kaur are husband and wife and citizens of India. They've been ordered removed from the United States because they violated their visitor's visas by remaining longer than permitted. They seek asylum in the United States. Mr. Singh's Indian police and his two uncles were murdered because of their political beliefs and their associations. The IJ and the BIA denied removal relief because they found that Mr. Singh did not meet his burden of proof with credible evidence. The Immigration and Nationality Act, as amended by the Real ID Act, requires that an adjudicator consider the totality of the circumstances when assessing a witness's credibility. And under this standard, an adjudicator cannot make such a finding unless the witness is first informed of any deficiencies or discrepancies perceived in his evidence and given an opportunity to explain. A discrepancy or a deficiency which is reasonably explained cannot support an adverse credibility finding. Mr. Singh and Mrs. Kaur contend that the Court should grant their petition for review and remand their asylum application to the IJ because the adverse credibility finding was improper. The IJ and the BIA made their credibility findings without first informing themselves of the totality of the circumstances. There were four reasons that the BIA gave for finding Mr. Singh not credible. The first was that they found that he should have corroborated his membership in the Sharamani Akali Dal Party, and that he was harmed as a result of his membership in this organization, and that this evidence was reasonably available to Mr. Singh. But at the hearing, Mr. Singh was not asked why this corroborating evidence was not presented. The BIA and the IJ could not provide a finding regarding whether it was reasonably available unless Mr. Singh was first informed that this was a deficiency and given an opportunity to explain. The IJ found that this corroboration was reasonably available to Mr. Singh because he testified that he was an important party member. But Mr. Singh never claimed that he was a party official or a man of particular influence in the party. He testified that he was a party worker. And being a worker does not necessarily mean that this kind of corroborating evidence was reasonably available to him. The IJ should have told Mr. Singh that this evidence was expected and at minimum asked Mr. Singh why it was not. And having failed to do that, the IJ didn't inform himself of the totality of the circumstances. The second factor that was cited for finding Mr. Singh not credible is that he testified inconsistently regarding whether he was alone or with his maternal uncle when he was arrested in January of 2001. But as discussed in the opening brief, the questions Mr. Singh was asked regarding that day and his arrest were imprecise. Mr. Singh's testimony was perceived as being inconsistent because the confusing, imprecise questions he was asked. You think it was the questions that were imprecise rather than his answers? Because I looked at the record on that point in particular, and it appears even Mr. Singh's own – were you trial counsel, Mr. Singh? Yeah. It appears even his own counsel picked up on the inconsistency in his testimony and asked at one point that the tape be played back and asked him to reconcile his answers with earlier answers that he had given that didn't seem to be in sync. I mean, it struck me it wasn't so much the questioning that was imprecise. It was that the storyline varied as to the date and whether his uncle died while in custody or immediately after custody. And there was an effort on the part of his own counsel and the I.J. to clear that up at the time. Well, I don't think that the I.J. participated in trying to clear that up. I think that he allowed Mr. Singh's counsel to go back. Well, he asked a question about counting method because of the inconsistency about the date. The I.J. intervened at one point and said, how are you counting these dates? How do we get 11 days? Do you start the day after or – and I think that was responsive to the – some of the inconsistency in Mr. Singh's testimony. It was, but there were two different factors that the I.J. was focusing on. One was whether Mr. Singh was alone on the date he was arrested, and the second was how long was he detained. So the immigration judge, in questioning him about the date of release, was not focusing on whether or not Mr. Singh was alone or with his uncle when he was arrested. And that is what the BIA focused in on in finding that – in upholding the I.J.'s decision on this one narrow issue of whether or not Mr. Singh was alone when he was arrested. And this lawyer did go back because when he first – in the first part of the direct examination, Mr. Singh did appear to suggest that he was alone, that his uncle wasn't with him. There was some ambiguity in that. And the I.J. allowed the lawyer to go back to try to clarify that. But in the course of the questioning, whether it was on the two times that he was questioned on direct or on cross-examination from the lawyer representing Homeland Security, he was asked different questions. He was asked whether he was alone. He was asked whether any other people were arrested during the time that he was detained. He was asked did he travel to the rally with anyone else. He was asked various questions. But what more needed to be done in your judgment? You – respecting only this issue – and I know there are other issues that you contest where he should have been given an opportunity to explain or present additional evidence – what more do you think should have been done with respect to this issue about whether his uncle was with him when he was arrested, when his uncle was killed? What else should have been done? I think that the I.J. should have stepped in. And if the I.J. had questions in his mind, if he wasn't satisfied that Mr. Singh's account was consistent, then he should have questioned Mr. Singh. The I.J. had that authority by statute to examine and cross-examine Mr. Singh. He never told Mr. Singh at that hearing that he was questioning this. He sat passively back and he listened to the two attorneys question him. But Mr. Singh was never told by the I.J., this is – I have a problem with this. Mr. Singh, why don't you explain to me once and for all, were you alone or were you with your uncle? Because you appear to be giving inconsistent answers. And I think that that's what the I.J.'s duty is. Kennedy. Counsel, Judge Gould, if I could interject a question, if you're done with your answer on Judge Burns's question. Gould. Yes. Kennedy. Could you tell me what are the Ninth Circuit precedents that you think most strongly support your client's position that there should have been more inquiry by the – by the I.J. about inconsistency or about needed cooperation? Gould. The Shrestha decision? I think that that decision back in 2010 said that the I.J. had the duty to inform himself of the totality of the circumstances. And in order to do that, he had to specifically advise the witness of each of the different factors that were – that the I.J. thought were in doubt. That's what totality means. You can't leave anything out or it's not the total picture. And I think the I.J. had the duty to inform Mr. Singh, and he didn't do it on this point of whether or not he was alone or with his uncle on the date that he was arrested. Kennedy. Well, I remember Shrestha. Anyway, you might want to reserve some time for about – Kennedy. By the way, just before you sit down, what relief are you asking? What do you – what do you – if you were to prevail here, what do you want us to do? Gould. To remand it to the I.J. Kennedy. For? Gould. To allow Mr. Singh to explain why he didn't present the evidence from the party, to explain whether it was reasonably available for Mr. Singh to have a further opportunity to, in a lucid way, pose a question. Kennedy. Okay. All right. Thank you. Gould. Thank you. Evans. May it please the Court. I'm Manning Evans, representing the government in this matter. The record does not compel the conclusion that Petitioner was credible in this matter. And as Judge Burns pointed out, with respect to the most important inconsistency, whether or not the Petitioner was arrested alone in 2001 or with his maternal uncle, Tejas Singh, the Petitioner's trial counsel clearly did recognize the issue there. And by my count, he made four attempts between pages 102 and 104, and then at page 116 of the record, four attempts to elicit a consistent response from his client that showed that he was arrested with his uncle. Finally, at pages 117 and 118, Petitioner finally recognizes some issue, and he acknowledges that his maternal uncle was killed on February 5th. And then only with further questioning by the trial counsel for Petitioner did the Petitioner say, oh, and I was The trial counsel clearly made this problem known to his client, sought to reconcile it. And this also shows that the agency was reasonable in relying on this inconsistency, because the Petitioner is more likely to be recalling a narrative as opposed to events that actually happened to him if he's not able to recall this important point. Did the I.J. alert him that there was an inconsistency in his testimony? You really ought to explain what's going on. Well, Your Honor, the Petitioner said at page 121, he knew what the problem was. And Petitioner himself says, my memory is very weak, my memory is very weak, and I often make mistakes remembering things. Well, right there you have basically a concession by the Petitioner that he is not able to testify in a credible manner, in a manner on which a judiciary will rely. Counsel, isn't that a little bit of an extreme characterization? I mean, I understand the government can argue that he's not able to, but to view his statement about memory as a concession by him that he's not able to testify in a credible manner, I think is not accurate. Well, I'm sorry, Your Honor. I think that this is his effort to explain, this is Petitioner's effort to explain why he did not mention being arrested with his uncle in the first place. And if this Court is looking for an explanation from the Petitioner of that discrepancy, it's right here. I think that is a legitimate characterization of the record. In any event, I would point out as well on pages, this is at page 118 of the record, the immigration judge says that he's aware of a problem, and Petitioner's trial counsel acknowledges that. He says, yes. Now, it's not expressed, it's not stated outright that they're talking about this inconsistency, but when you read the entire record, it is apparent that everybody knows what the problem is. And Petitioner has an attorney who can elicit or not further testimony if he thinks it's appropriate. So I think the record is clear. Breyer, let me focus on that again, where the judge says to Petitioner's counsel, he says, I know what the issue is, but I'm not sure about it. Let's be very careful here. Yes, Your Honor. That's what I'm talking about. I believe that as you read the transcript leading up to that point, it's apparent that the I.J. knows that the Petitioner's counsel is trying to reconcile the inconsistency that has developed in the testimony. So why didn't the I.J. just say, there's an apparent, obvious inconsistency here, we need an explanation for it? Well, I think that he was concerned about the need to be oblique and I think that he doesn't want a leading question from the Petitioner's counsel. And I think that it is not the express – it is not an express statement of the inconsistency by the judge. But then Petitioner has counsel and Petitioner's counsel could decide what to do with  I think that it's the same thing. Let me ask you this. Judge Gold brought up a question about what case counsel is relying on for the need for the I.J. to alert Petitioner's about inconsistencies in their testimony. What do you understand to be the state of our law on that issue right now? Well, this Court in footnote 14 of the Wren decision did indicate that much remains intact after the real ID. The government has some issues with some of those procedural tools the Court uses, but it's our understanding that the opportunity explain rule remains intact. And how that's applied does tend to vary case by case, looking at the context. Has a fair opportunity been presented? And here we have the Petitioner's statement that his memory is faulty and we have some indication from the I.J. that there is a problem. And the government submits that that's adequate in this case, considering all that came before the immigration judge during these proceedings. The second reason that the Board cited for upholding the immigration judge's adverse credibility decision was inconsistencies regarding the timing of events surrounding the 2001 arrest. Petitioner claims that these are minor inconsistencies, but I would point out first initially that under the Real ID Act, a minor inconsistency can still be relied on. Now, this is also not a trivial inconsistency. We're not talking about a stray comment by the Petitioner, a single instance of confusing a date. We're talking about Petitioner insisting that he was arrested on January 26, 2001. Repeatedly he says that. He says that in his declaration. He says he was held for 11 days. He also repeats that several times. He also repeats several times that he was released 11 days later with his uncle. The I.J. clarifies that date with him. It turns out that date would be February 6. And yet Petitioner also testified that his uncle was killed on February 5th. And in fact, there is a death certificate at page 397 of the record that shows that the date of death of the uncle was 5-2-2001. Now, that's a different notation than we use in the United States, but I think it does show a date of death of February 5th. Further evidence of an inconsistency. In this instance, concerning this inconsistency, the I.J. did review with the Petitioner his method of counting days. That's all he did in terms of eliciting an explanation. And we would submit again that in the totality of the circumstances here, it was sufficient. I will also agree, Judge Pius, it's not an express statement of you're saying the 6th, and yet you're also saying the 5th. But we would say that the agency acted reasonably here and that the evidence does not compel the conclusion that Petitioner was credible here. Turning to the question of the legal rules, and then there is also the substantial evidence, and I acknowledge that, Your Honor, but I think that substantial justice is being done in this case by the agency. Regarding the need for corroboration, I would point out initially that this is not a case where the immigration judge or the board assumed or found that Petitioner was credible. Now, that makes this case different from Wren, and I point the Court to footnote 11 in Wren, where the Court makes a point of saying, oh, here we have a case where we're talking about the immigration judge assuming the Petitioner is credible, and yet we're requiring corroborating evidence. Now, that's a situation that raises the issues concerning the paragraph that's 8 U.S.C. 1158b1b2, and that's not an issue raised in this case, because here no one ever considered or assumed that this Petitioner was credible. Now, with respect to whether or not Petitioner received notice before the IJ of Idnitio and the need to corroborate, I don't believe that that issue was exhausted before the BIA, and I would point the Court to page 24 of the record. This is Petitioner's brief to the board, and all he's complaining about there is he says that corroborating evidence wasn't necessary, and he relies on pre-Real IDIAC case law, and then he also suggests that it was not available. And those are the issues. Well, as I understand from my – from counsel's response to my question about what relief he's seeking, as I understood his response was that if he were to prevail on his argument that the credibility determination has to be set aside because it wasn't an adequate opportunity to explain the inconsistencies, he's just suggesting that it goes back for that opportunity to take place. And there's really – if that were to happen, there's really not an issue about notice and corroboration. Well, that's true, Your Honor. They can deal with that when it gets back to the agency. That would be true, Your Honor. Our position is that the record is adequate to deny the petition for review outright here. Okay. And we would ask that the Court do that. Thank you. Thank you very much, Your Honor. Counsel, you had a few moments for rebuttal. Thank you, Your Honor. Well, regarding this issue of whether or not the inconsistency about whether Mr. Singh was released on February 5 or February 6, I think that the Court has held that certain factors should be considered, any kind of relevant factors should be considered in determining a witness's credibility. This event occurred seven and a half years before Mr. Singh submitted his asylum application. I think that the passage of time was a relevant factor that could have been considered and it was not. But more importantly, there are certain factors that the statute requires that an I.J. consider, and that includes the demeanor of the witness. There's no mention at all from the I.J. about Mr. Singh's demeanor when he was confronted with this inconsistency and the date counting was going on. And when the I.J. showed him that he was mistaken, Mr. Singh acknowledged it. And I think that the absence of any comment by the I.J. about Mr. Singh appearing to be a person who was caught in a lie could – that the Court could presume that he was – just made an honest mistake, possibly, about the date that he was – he was released. I think that the – in the Shretha decision, the Court says that an I.J. should not cherry pick evidence. It ignores certain factors and rely on other factors. And this – this I.J. may have done that by – by just leaving out entirely the question of demeanor throughout this decision. The Court defers to an immigration judge. Because an immigration judge is in the room with the witness, the immigration judge is able to look at the person. That's the reason why such deference is given, and that's totally absent in this case. Roberts. Thank you, counsel. Thank you, counsel. We appreciate your arguments. And the matter is – is submitted.
judges: Burns, Gould, Paez